Or are you about to receive 15 minutes per side? Thank you. You're welcome. We'll be right back.  Thank you. Mr. Court, David Greco here on behalf of Catherine Henderson. Judge, I'd like to reserve two minutes of bottle time if it's necessary. This matter is an employment law matter, Catherine Henderson v. Chrysler Corporation. Ms. Henderson was a longtime employee of Chrysler Corporation, was terminated because her job was outsourced during the summer of 2011. Essentially, she was put on notice before, but while she was on an FMLA leave. This case is about FMLA retaliation, ADA discrimination, and Michigan's Persons with Disabilities Act discrimination. Now, we are here appealing the District Court Judge Borman's ruling on the defendant's SJ motion. We believe that there are clearly questions of fact with regard to the motivations of the defendants in this matter with regard to Ms. Henderson. Now, I know the matter's been extensively briefed, and we've got tons and tons of exhibits, so I'm going to try and get right to the point and make a few specific points. Now, with respect to what was put forward in the appellee's response brief, there is a continued reference to historical poor performance or her historical bad performance. This is completely a mischaracterization of Ms. Henderson's time at Chrysler. She had almost 25 years of experience there, repeated unbelievable performance evaluations, and received one, we'll say, poor to fair performance evaluation regarding 2010 from a manager that was briefly her manager, and was during a time when not only she had taken some leave, but was also during a time when Chrysler and the entire department, this talent acquisition department, was overwhelmed. And if you look at the actual facts underlying her year in 2010, it is revealed, as we put in the brief, that at least through most of the year 2010, she had accounted for more than 50% of the placements of the entire department and was doing very well. And it was only after this meeting in September with her then supervisor, Ms. Wicker, that something comes up about her absences or her vacation schedule, which was no different than anybody else's vacation schedule during that time. The only issue that she had had is that she had had some prior FMLA leaves or medical leaves. But not as FMLA leave. Well, not designated as FMLA leaves, but certainly the FMLA provides the protection against whether or not you can be What's that? If you just get FMLA leave, if you just get paid leave, that's not FMLA leave unless you ask for it and it's designated as FMLA leave, is that correct? That's correct, Your Honor, but I believe That's why I'm puzzled by the reference to this, to even the period she was out for, what was it, rheumatoid? Rheumatoid arthritis during this summer. That, well, Your Honor, what happened Answer no question. The answer is it was never officially designated as FMLA leave. So it's FMLA, it could have been FMLA leave if they'd asked for it, but it wasn't. Is that correct? No, I don't think so. I think it is retrospectively FMLA leave for protection under the Act. Do you have cases that say that? Yeah, we cited the What's the best case that says that if it wasn't, not that it was paid, but that it was paid and designated as FMLA leave, which are two different things, right? They are two different things, however Because you have a total of FMLA leave that you can get. That's correct. If it's not designated, you get more later, potentially. Potentially, that is true. So if you don't ask, if you're off on paid leave, you can ask to have that designated as FMLA or not, right? That is true, Your Honor. Or I guess the company can say, we're going to treat that as FMLA leave if they want to. That is correct, Your Honor. And once they're put on notice of that, I think that the FMLA retaliation protections protect against that. I mean, what's the best case that supports it? I don't have the best case. I have this Is there a case that supports it? There are cases I'm talking about designated, not potentially designated, but designated. The only thing I can say to you, Your Honor, are the federal rules, regulations, that provide that all that an employee needs to do is provide the reason for the leave, which may be, you know, which is for a medical leave. But the employee must tell the employer that it's either for paid or not paid, and FMLA is unpaid. Well, no, FMLA can be unpaid. You know, pursuant to different employer, employers can require you to take vacation time. They can require you to take paid sick time. They may have policies that provide for paid time. So it depends many times on the employer's policies, and the employers may impose that you take your paid time if you're taking the FMLA time. So, Judge Rodgers, you are correct. There is an issue where someone may request leave that has paid time, and then if they request FMLA leave later, it could be I'm just wondering whether when they do that, when they get paid leave and neither the employer nor the employee has treated it as FMLA leave, until the time of the alleged retaliation, that that can be treated as retaliation for FMLA leave. Well, I think And you're about to give me the case. One second. Well, maybe on rebuttal you can give me the case. Yeah, on your rebuttal, Your Honor, I'll look at it. Thank you. Please proceed. Sure. I focused this primarily on a factual issue. The next issue I'd like to bring up Before you go where we want to go, I would like to know, you're in federal court on FMLA as your grounds. And yet your opponent tells us that your client never submitted any FMLA paperwork. The facts of the case are, Your Honor, that my client informed her supervisor that she needed I got that. Now, the question was with respect to paperwork and a signature. The paperwork that she was given, when she came back to work at the end of June, which is just prior to everything being outsourced. When her paid leave expired. She exhausted her paid leave in June of old. And she was told, you know, you need to fill out the FMLA paperwork. My understanding at that point, and I believe the factual context is, is they wanted her to submit the paperwork with respect to the leave that had just been taken as designated as FMLA leave. And not necessarily as Brooke's. Did she ever apply? I think it must be necessarily, must be a writing. Did she ever complete? No. She was given the paperwork, but then she was put on. The answer is no? The answer is no. Correct. Good. Okay. Okay. I apologize, Your Honor. The next issue that I'd like to address that's put forward in the reply brief is my client's absentee problems or attendance issues. I don't think there are any absentee problems or attendance issues. We have testimony in the record that indicates that she never violated or exceeded any absentee or attendance issues. And in the issue where they're talking about why she should not be hired or why she should not be taken on for this new position that she's ultimately offered in December 2011, the indication is absentee issues. And then clearly it's, well, what absentee issues are they talking about? Are they talking about the leave that she took during the summer for the rheumatoid arthritis? Because that would be the only thing that is relevant. She took a vacation in February. She took a sick day in April. I don't believe she took a sick day in March. And she had the first week of May, she was off work for two and a half days to deal with a sick daughter that she informed her manager about. She then offered to work from home for one of those days. She then informed her manager. Did she do that? What's that? Did she actually work from home those two days? Yeah, the testimony is she put in seven or eight hours on the particular day. I'm not sure about the first two days, but with respect to the third day where she took her child to the doctor in the morning, she worked seven or eight hours the remainder of that day. So two days, no work. Two days, no work it looks like. Okay, but again, not against Chrysler policy. She informed her supervisor that she was taking the time off, the reason for the time off. Somehow, I have a question that you, in your reply brief, you say that the complaint need not assert that those absences for the sick child were pertinent. We believe that they are pertinent. If the court is going to find that because throughout discovery or during discovery, we found out that their managers were holding those couple of days against her because we were not aware of those emails that said, oh, this is a problem, here she is again, my daughter was sick and I didn't miss work, so why is she missing work? But I think that in answer to your question, it goes to the context. May I ask, were those absences, confirm, FMLA qualifying absences? I think they would be qualifying absences. She provided medical documentation of a serious issue. And Chrysler argues that they're not? Correct. What's your response to the argument that they are not? I mean, Chrysler is just dead wrong? Yes, I think. Because? Because, number one, FMLA provides that you can stay home to take care of a sick child if it's a serious condition. Based upon the documentation that she provided, this was not just a cold. This was something that she had taken her to the doctor, that the doctor was doing blood work. We'll hear from Chrysler. You're suggesting Chrysler misunderstood the seriousness of the child's sickness in arguing that this was not qualifying? I am saying that, Your Honor. We'll hear from them. I don't think there's a factual issue necessarily about what, in fact, it was, but I think they're missing the boat on that. I think it would be a qualifying. But even if this court indicates that that is not qualifying or that the plaintiff did not properly amend the complaint to include those 2 1⁄2 days, it is still permissible within the context of everything. The rheumatoid arthritis leave that she took, this other leave that she took, and the animus that they have toward her for taking the time to address these issues. Next. With respect to the credibility, I only have a minute and a half, we have the issue regarding the credibility of the defendants and the reasons, and the proffered reasons, why they were not offering this job or then rescinded a job offer or rescinded a job that was in the process of being offered to her. We have the issue of the shifting sands defense that, to the EEOC, Chrysler provides as the proffered reason that she was not qualified, did not have the technical abilities for the job, which of course is essentially rebutted by the fact that she was offered by the job who wanted her, this Michael St. Pierre, and also by the fact that later on in the testimony and with regard to the evidence in this case, it's just simply not true. And this is the person who is writing this to the EEOC, who is actually involved in speaking with her manager, and we believe that the fact that they're attempting to cover this up or saying something that's clearly not truthful, that's uncovered, clearly demonstrates that this is an issue and a question of fact as to what the motivation is. And just briefly, I have 30 seconds, with respect to the causal connection, which is something that the district court focused on, because of the decision that was made during the summer and the emails from the summer and then this email and the decision that was made in December, I don't think with respect to this situation it matters whether this email exchange or these decisions took place in August or December. They're still the same events, they're still for the same reasons, and we believe it's for retaliation. Thank you. Thank you, Counsel. Good morning, Your Honors. May it please the Court, Stan Hill on behalf of the Priceford Group, LLC. Your Honors, this Court should affirm summary judgment for the same reasons that are outlined in the district court's exhaustive analysis of the undisputed facts and applicable law. The principal failure of Ms. Henderson's claims are the prima facie elements that this Court should confront before discussing any issues of pretext, and those issues we submit are moot in light of the failure of the prima facie elements of both the disability discrimination claims and the FMLA retaliation claim. Specifically, with respect to the disability discrimination claim, Ms. Henderson has not shown that a non-disabled person was hired under the model plan or requisition at issue, which is the sole position that's at issue, that the sole decision maker on that requisition, Michael St. Pierre, knew of the rheumatoid arthritis at any relevant time, or that the alleged cat's paw, Joe Delacat, harbored any animus because of Henderson's rheumatoid arthritis that's required to impute the requisite knowledge to Mr. St. Pierre on a cat's paw theory. That inference cannot be drawn because Mr. Delacat assessed Ms. Henderson's deficient performance prior to first learning about her rheumatoid arthritis and prior to her alleged FMLA-protected activities in May and June of 2011. What was the real reason that he told that why she shouldn't be employed there? Was it absenteeism or was it something else? She wasn't very good at her job or what was it? Her deficient performance was a combination of her performance while she was in the workplace and also her failure to ensure that her work would be performed by others when she was out of the workplace, and that is related to her attendance. I'd note for the Court that in 2010 and in 2011 through April 21st of 2011, there has been no suggestion by the plaintiff that any of the absences were FMLA-protected or related to any disability plead in the case. Within just the first four months of 2011, Ms. Henderson was out 13 days. None of those days are alleged to be due to an alleged disability or due to an FMLA-protected activity. In fact, on May 10th, one day, actually the same day, but earlier in the day before Ms. Henderson claims that she told Mr. Delacat that she had rheumatoid arthritis, Mr. Delacat and Ms. Wicker, who was Ms. Henderson's 2-up supervisor at the time, met with Human Resources and decided to place Ms. Henderson on a performance improvement plan for her deficient work performance, which had shown symptoms back to March of 2010, which was seven months after Ms. Henderson returned from her second medical leave for her knee. And I would note for the Court that she was accommodated by Ms. Wicker upon returning from that medical leave, and it's undisputed. So on May 10th, Mr. Delacat, Ms. Wicker, and Ms. Schock of Human Resources decided to put Ms. Henderson on a performance improvement plan for reasons that are documented in Ms. Schock's notes. Those same reasons are documented historically over the relevant time period from March of 2010 all the way forward to April of 2011, and those emails are on the record. And in response to the argument of the plaintiff that this is unfair because her legitimate absences are being held against her, you say what? Well, I would submit to the Court that first... I mean, they were sanctioned absences. As it relates to her children's various illnesses that popped up over time, taking one or two days off to care for her children was never shown to be an FMLA-protected activity in the record. Those illnesses were not shown to be serious health conditions. Also, I would note for the Court that in Ms. Henderson's summary judgment affidavit, she states that she decided herself not to go out on an FMLA leave when her daughter had Bell's palsy in March of 2010. She decided to continue working and to work through that. Are we talking about the FMLA retaliation claim right now? I presume that that's what Judge Cook is referring to, but specifically on the claim that is pled. All that is pled on that issue, Judge Rogers, is that Ms. Henderson allegedly engaged in FMLA-protected activity when she took herself out on a paid medical leave in May of 2011 for her own rheumatoid arthritis. That's what I wanted to ask about. Is it your position that let's say you had a situation where an employer discriminated, and you concede in this situation that the employer discriminated based on some leave that was taken, and that was leave that could have been FMLA leave but wasn't designated either by the employer or the sick employee, let's say, as FMLA leave but rather was paid leave, paid leave that wasn't designated as FMLA leave. Is that engaging in inactivity protected by the FMLA for prima facie case purposes under the retaliation cause of action? Under your hypothetical, it would be if it's shown in the record to actually be an FMLA serious health condition. Oh, so even though it's not, if it's a condition that could have resulted in FMLA leave, then they can't discriminate against them for having taken non-FMLA leave but paid leave? Do you know what I was saying, Judge Rogers? The first thing must be shown is it must be a serious health condition. The second thing is that it's a serious health condition. I understand. The second piece to your question, I believe, is that it has to be designated as FMLA because, as you pointed out in the appellant's argument, the right to FMLA leave is limited. And in order to take that time... I understand that. I'm trying to get at the answer. The answer is no, that isn't protected, or yes, it is protected for discrimination purposes? No, it is not protected. Well, he's going to give me some cases that say it is. Do you have cases that say it isn't? I think it's to the point that there must be some record evidence that it was FMLA qualified. I'm asking for support for that. Now, does the statute say that? Or are there cases that say that the statute says that? If there is no certification provided and filled out, the employer... I'm just hypothesizing that it's paid leave and nobody mentioned FMLA, the company, the person, nothing, until later when retaliation is asserted. Then they say, oh, that should have been or could have been or would have been FMLA leave. In that situation, is that against the law for the... Hypothetically, they're firing the person because they took paid medical leave, hypothetically. Can they do that consistent with FMLA? Hypothetically, if it's shown to be an FMLA serious health condition in the record, then I would say... FMLA qualifying. Qualifying serious health condition, yes. Yes, what? Yes, it's protected? It could be protected, yes. You mean it could be protected? If it's shown to be FMLA qualifying. Even though there was no mention of FMLA leave at all? As I was stating... And there was no application for it or whatever? As I was stating... You're conceding that then? I'm stating, I'm trying to understand your hypothetical in that if there's no mention of FMLA at all, the employee still has the right to take FMLA down the road for whatever other serious health... Down the road he has the right to. And for that reason, simply looking back in time and saying, well, this is potentially FMLA qualifying, therefore it's protected activity, that doesn't hold water because the employee retains those rights. You just said it did. We're talking about retroactively looking at it. Retroactively looking back, then I would submit to you that no, because the employee still retains those... I'm asking for support for that. It makes sense to me. Does the statute say that? Do the cases say that? I don't have a statute or a case to... They seem to be basing their whole argument on the contrary. The argument as to these facts is that there is no causal connection between what FMLA is... I understand the causal connection, and I'm trying to see whether you're also arguing that they were not engaged in an activity protected by FMLA because to be an activity protected by FMLA, there has to be FMLA leave or not. Or does the FMLA protect you against retaliation based on a leave that could have been but wasn't FMLA leave? Yes or no? The answer to your question is no. I think we cited a case in our brief that addressed this tangentially in the context of these facts. And that is Ms. Henderson, at every opportunity to take FMLA leave in this case, the record shows that she intentionally chose not to and chose to take paid medical leave. Now, this bears out over time here in this case because... What's the case? The case was Nay v. Hoisington. It's a Tenth Circuit case. How do you spell Nay? M-A-Y? N-E-Y, Your Honor. The site is 264 F Appendix. Thank you. I took too much of your time. Thank you. Briefly, Your Honors, I'd like to turn to the issue of pretext that opposing counsel touched upon. And particularly with this shifting sands issue that's been raised. It's undisputed in this case, not only with the record evidence, but also the repeated admissions in Ms. Henderson's briefs both before the district court and this court as to the true and sole reason why Ms. Henderson was removed from the offer pool for the model plan of requisition. That being her historical performance deficiencies over the relevant time period, March of 2010 through April of 2011, and is recognized in the May 10th decision to place her on a performance improvement plan. Her counsel said that she did a great job and did the best job in the whole department for finding workers or something like that. Did she all of a sudden deteriorate in her job, or is that erroneous? Judge Sawyer, I think there are some important facts of record that are undisputed that need to be addressed to your question. And that is, first, that when we say Chrysler, post-bankruptcy is an entirely different company. Post-summer 2009 is an entirely different company than the company that Ms. Henderson was employed by prior to that time period. The new Chrysler, the Chrysler already appearing before you today, has entirely different performance standards and entirely different management philosophy, but more to the point of Ms. Henderson's performance. The talent acquisition group in which Ms. Henderson was a placement manager beginning in late 2009 into 2010 was part of Chrysler's rapid rehiring of highly skilled workers in a very competitive environment. And that placed tremendous demands on all the talent acquisition placement managers. Ms. Henderson was responsible for the hiring functions of three different internal groups, internal customers, internal clients of Chrysler. And in early 2010, Ms. Henderson went to Ms. Wicker, who was supervisor at the time, and said, I'm being overwhelmed, I need some help. Ms. Wicker provided her, at Ms. Henderson's request, two contract employees to personally assist Ms. Henderson's workload. No other talent acquisition placement manager in the group received such help, and Ms. Wicker testified that as the most experienced member of the talent acquisition placement group, that she expected Ms. Henderson to lead and manage those individuals. And this bears on the quasi-attendance, quasi-performance issue that really is driving the decision that's at issue here. And that is, when Ms. Henderson went out for various reasons, whether it was vacation, or personal time, or her child was ill, there were always internal customers asking, where is Ms. Henderson? Why haven't I heard an answer to this question? And no one was designated to be the point person to answer these questions. This was a long time before she took the leave with a sick child? Or was this after that? There is the sick child issue in May of 2011, which was the two days in May 3rd and 4th of 2011, and also half day on May 6th, I believe, opposing counsel was referencing that. And that is the issue that was raised for the first time in Ms. Henderson's summary judgment response brief. And the district court, we submit, properly deem that issue waived because that's an entirely different FMLA retaliation claim than what was pled in the complaint. And Chrysler had no opportunity to conduct discovery on that to see whether that, in fact, was an FMLA serious health condition. But even on the record evidence that Ms. Henderson submitted on that point, it shows that the child's illness was not shown to be FMLA qualifying because there's not shown to be two doctor's visits, the second of which was mandated by the doctor. The authorities for that are in the regulations cited in our brief. My question, though, was whether her absenteeism came up before that sick child incident or afterwards. It came up before several times in the context of the e-mails and also on September 8th of 2010 when Ms. Wicker counseled Ms. Henderson about her improper taking a vacation every Monday and Friday over the summer and how that affected her performance and specifically to the issue of her internal customers not knowing where she was. That September 8th meeting was on the heels of an e-mail chain. This is just one of many e-mails in the record where one of Ms. Henderson's internal customers is asking Ms. Henderson for information and repeatedly asking, and Ms. Wicker is actually copying on this e-mail chain, and that being Doc 32-7, pages 133 and 134 in the district court record, but it's simply this, Monday, August 30th, an internal customer asked Ms. Henderson for some documentation. It's not provided. A follow-up on September 2nd. I'm still asking for this information. Where is it? No answer. September 7th, I'm still waiting to hear from you. Was she absent from work on leave, or did she just kind of disappear? There is no evidence in the record as to why she was out at that time, and Ms. Henderson's summary judgment affidavit does not say that that was a time she was out taking care of a child or any other. And was this at the time after which she had been assigned the two helpers she asked for? Yes, Your Honor. I see my time is about running short. However, I did want to address one issue on the pretext argument, and that is this. In our briefs, we cite the St. Mary's Honor case, which, candidly, is not a summary judgment case. However, I think the spirit of that case comes through in other Sixth Circuit authority, which states that even if you have, for example, Mr. Franson's e-mail after the fact, who, by the way, Mr. Franson had no knowledge at any time that Ms. Henderson had taken what she now claims to be FMLA leaves, or that she had an alleged disability of rheumatoid arthritis. But if the record conclusively reveals some nondiscriminatory reason for the employer's decision, which we have in this case through the repeated admissions in the briefs, and also Mr. St. Pierre's e-mail where he states, just after he got off the phone with Mr. Franson about these performance deficiencies, I'm deciding to remove her from the offer pool. We have that evidence, then summary judgment for the defendant is still appropriate, even though there is this inconsistent statement by a nondecision maker who had no knowledge of the protected activities. And then finally, I would just note for the Court that if Ms. Henderson disavows that, those admissions, then the cat's paw theory in which she proceeds crumbles because there needs to be some causal chain between the alleged assessment of Mr. Delacat and Mr. St. Pierre's ultimate decision. I see my time is up. Thank you, Your Honors. Thank you. May it please the Court again. David Greco on behalf of Ms. Henderson. I would address Judge Rogers and the rest of the panel to the Appellant's Brief on Appeal, page 40. It provides the case law and the sites to Hoffman v. Professional Med Team, which is 394 F. 3rd, 414 6th Circuit, this case. On the following page, 41, it's Bryant v. Delbar Products, which is 18 F. 2nd, 799. And then finally, in that paragraph on page 41, Brannon v. Oshkosh Bagosh, Inc., 897 F. Sup. Those are cases where they're deemed to have requested FMLA even though they don't use the word FMLA. That's correct, where the employee does not need to reference FMLA or use a form to request FMLA protection. In order to get FMLA protection. That's correct. Here the contention is that there was no FMLA protection. These were not FMLA protected? They potentially protected, but weren't in fact protected. Protectable, but not protected, I guess. The quote from the Bryant case was that the Court found that the employer violated the FMLA by assessing the plaintiff or the finding with a negative employment penalty for her absence when it had noticed that the absence was an FMLA-qualified leave. And from the questions that were posed to opposing counsel, that rheumatoid arthritis is clearly our position, as put forward in our briefs, an FMLA-qualified leave. Even though it was never sought. Or they never gave her the form. She didn't ask for the FMLA form. Is my sentence not working for you? That she never sought FMLA? I don't believe that's it. Okay. She did seek FMLA treatment benefit. She didn't ask for the form, but she asked for leave to treat with rheumatoid arthritis. If the question is did she ask for it to be designated at FMLA, no. Yes. You think that's irrelevant because of this case? I do, because I think it's a TAMOF for a medical condition. It makes sense, I guess, to say if they can't penalize her for being absent when she could have had FMLA leave, that they can't penalize her for being absent with permission for paid leave when she could have treated as FMLA. That's the logical step that you're advocating. That is correct, Your Honor. All right. My time is up. Thank you. The case will be submitted, and we can call the next case. Thank you, counsel.